THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JACOB BARRON, Defendant.

County Court, Tioga County, January 8, 1934.

*George L. Andrews, District Attorney,* for the plaintiff.

*Peter J. Carroll,* for the defendant.

TURK, J. On the 21st day of June, 1933, the defendant, Jacob Barron, was convicted of the crime of " conveying liquor into the County Jail in violation of Section 1691 of the Penal Law of

the State of New York " in the village of Owego, N. Y., after a trial before the police justice without a jury. The statute reads: " a person * * * who personally or through any other person or persons gives, sells, furnishes, or otherwise delivers to any prisoner or prisoners in custody any drug, liquor or any article prohibited by law * * * is guilty of a misdemeanor." On the trial the People swore three witnesses. The first witness was Frank Gleason, who testified that on or about the 18th day of April, 1933, he was a prisoner at the county jail of Tioga county, but that he worked in and about the jail as a " trusty," and while so confined(?) he went " around the Village to different places." Among the places that he went was a place conducted by this defendant, Jacob Barron, at which place he purchased a quantity of whisky from the defendant. The witness stated that the defendant knew him and knew he was in jail; that the defendant asked " how everything was in jail," and that the witness had had conversation with the defendant about the liquor going to the jail. The witness also testified that after procuring the liquor he climbed up on the outside of the jail and placed the liquor on the bars. The chief of police of the village of Owego testified that on different occasions during the month of April, 1933, he saw the witness Gleason climb up on the outside of the county jail and as far as the second story. Edward Houpana, who was confined in jail at that time, was also called as a witness and testified that at various times he had seen liquor passed through the window on the second floor of the jail by the witness Frank Gleason to a prisoner by the name of Rutledge who was confined in the jail. That was the entire testimony by the People. The defendant did not take the witness stand and called no witnesses. The defendant now maintains that he is improperly convicted, in that the witness Gleason was an accomplice and that there has been no corroboration of his testimony sufficient to connect this defendant with the commission of the crime.

To constitute an accomplice one must be so connected with the crime that at common law he might himself have been convicted either as the principal or as an accessory before the fact. To warrant such a conviction the one accused must have taken part in the perpetration of, or preparation for, the crime, with the intent to assist in the crime. (*People* v. *Zucker*, 20 App. Div. 363; affd., 154 N. Y. 770; *People* v. *Cohen*, 223 id. 406; *People* v. *Reddy*, 261 id. 479.) The witness Gleason, according to his own testimony, actually took part in this crime, for he himself, if we are to believe his testimony, carried the liquor in question from the defendant and handed it through the bars on the second floor of the county jail to a prisoner by the name of Rutledge. He is,

therefore, an accomplice as a matter of law and his testimony must be corroborated.

Section 399 of the Code of Criminal Procedure provides that " a conviction cannot be had upon the testimony of an accomplice, unless he. be corroborated by such other evidence as tends to connect the defendant with the commission of the crime."

The witness Gleason has been corroborated by the police officer and a prisoner in the jail to the extent of showing that a crime was committed. It is true, as stated in *People* v. *Dixon* (231 N. Y. 111), that the corroborated evidence is sufficient if it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the court or jury that the accomplice is telling the truth; that the corroboration is not restricted to any particular point; that its connection with the defendant's own statements might be considered, but it is the law nevertheless that there must be such corroboration either by facts or circumstances as tends " to connect the defendant with the commission of the crime." The language of Judge CROUCH in *People* v. *Reddy* (261 N. Y. 479), decided in April, 1933, is quite appropriate at this time. In reversing a conviction in which the remainder of the court unanimously concurred, Judge CROUCH said: " Here, then, is a typical case of conflict between the public need of bringing to justice one against whom suspicion of guilt exists, and the individual right of the suspect to be safeguarded within the law against the effect of tainted evidence." Later, in the same opinion, Judge CROUCH, after pointing out that there was nothing but the word of the accomplice to connect the defendant with the crime, said there was nothing in the testimony of the witnesses produced pointing to the defendant's connection with the crime which would not, with equal weight, point to anybody else whom the accomplice might have named. He said: " While this testimony was relevant and was corroborative of certain circumstances relating to the crime, it had no tendency, as we think, to connect the defendant with its commission."

And so in this case, while the evidence of the police officer and of the prisoner in the jail was sufficient to establish that the accomplice, Gleason, delivered liquor to one Rutledge who was confined in the county jail, there is nothing in the testimony of these witnesses pointing to the defendant's connection with the crime which would not, with equal weight, point to anybody else whom Gleason might have named. There is not a circumstance of any description which in any way connects the defendant with the crime. It follows then that the judgment of conviction must be reversed for errors of law. Enter order accordingly.