THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. HARRY MAIONE and FRANK ABBANDANDO, Appellants.

Argued November 28, 1940; decided December 31, 1940.

424

*Sydney Rosenthal, Harry G. Anderson, Samuel Bader* and *Benjamin J. Jacobson* for Harry Maione, appellant.

*Alfred I. Rosner, Michael W. DeFeo* and *James J. Horbatkin* for Frank Abbandando, appellant.

*William O'Dwyer*, District Attorney (*Solomon A. Klein, Henry J. Walsh* and *Burton B. Turkus* of counsel), for respondent.

LOUGHRAN, J. The defendants have been convicted of murder in the first degree.

The principal witness for the People was Abraham Reles, a confessed principal in the crime. His account of the commission of the murder was in many particulars in agreement with undisputed testimony of other witnesses in respect of the condition of the body of the deceased and of the circumstances under which it was found by the police. Such independently established external facts had in themselves no tendency to connect any identifiable person with the crime. In his charge to the jury (quoted in the dissenting opinion), the trial judge included those facts in his enumera-

tion of fifteen items of evidence which he said could — if credited by the jury — be accepted by them as corroboration of Reles. This, we think, was error.

Counsel for the defendant Maione say in their brief: "Most of the items of testimony referred to by the court * * * cannot be regarded as corroborative of Reles' testimony, inasmuch as they do not tend to connect the defendant with the commission of the crime. * * * Which of the items the jury found to be established by the evidence and accepted as corroboration is, of course, a matter of speculation. It is therefore no answer to say that some of the items were competent corroboration * * *. One thing about which there can be little doubt, however, is that some of the items which did not constitute corroboration must have been found by the jury to have been established by the evidence * * *. These items had reference to the physical facts of the crime, as to the existence of which facts there is no controversy. They were of such an undisputed character that their inclusion in the court's charge as items of corroboration was tantamount to an instruction that no corroboration was required at all." The error so complained of cannot, we think, be dismissed as immaterial.

In effect, the jury were told by the court that evidence in corroboration of an accomplice need not extend beyond the *corpus delicti*. Approval of that proposition would virtually cancel section 399 of the Code of Criminal Procedure. Section 399 requires that an accomplice must in some degree be corroborated in his testimony that an accused was implicated in the commission of the crime. Evidence which merely shows that the crime was committed in the fashion described by an accomplice is not such corroboration. (See *People* v. *Feolo*, 284 N. Y. 381, decided herewith.)

The judgments of conviction should be reversed and new trials ordered.

CONWAY, J. (dissenting). In the matter of corroboration, the court charged that the witness Reles was an

accomplice as a matter of law and explained the necessity for the production of additional evidence tending to connect the defendants with the commission of the crime. Defendants claim that certain of the items of corroboration submitted by the court to the jury could not be found to be such corroboration.

Each item of evidence offered as corroboration, when considered separately, need not tend to connect the defendants with the commission of the crime. " Matters in themselves of seeming indifference or light trifles of the time and place of persons meeting may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between defendant and the crime." (*People* v. *Dixon*, 231 N. Y. 111, 116, 117.) " The state is not called upon to point to some single or isolated fact which in itself, unrelated to other proven facts, will be sufficient corroboration." (2 Wharton on Criminal Evidence [11th ed.], § 753, p. 1271.)

The portions of the charge preceding the itemization and following it must be read together. This part of the charge is as follows: " Concerning the testimony of Reles, there are certain points of evidence which are here in the record and which, if believed by you to be true, may be accepted as corroboration. In charging you on these points the court expresses no opinion. It is simply picking them out and showing what, under the law, you may accept if you see fit or may reject if you see fit, but which, if accepted, may be viewed by you as corroborating *the testimony of the various witnesses* that a rope was around the neck and stab wounds on the body and a slash on the head. Secondly, the manner in which the body was placed in the car, as shown by the photographs. Third, the testimony of witnesses as to the finding — or a witness — of a type-written note in the dead man's pocket. Next, the misspelling of the word ' friend,' as shown by the note. Next, the expert testimony by Officer O'Malley, of the Bomb and Forgery Squad, that the typewriting was done by a novice and that there had been difficulty with the ribbon. Next, the character of the

contents of the note as an alleged warning to those who had given information to Mr. Dewey, if that be in fact the reasonable inference that you may see fit to draw from the evidence. Next, the body being actually found in a different Precinct. Next, the body being actually found in a stolen car with false license plates. Next, the actual borrowing of the tan car by Abbandando for a period covered by the alleged murder arrangements. Next, the testimony by Detective Browser of having had many talks with Rudnick in the Brownsville and East New York sections. This has a bearing on the theory that Rudnick came under suspicion by the defendants as a police stool-pigeon. Next, the testimony by Maffetore that at Maione's request he waited around until after the murder, but without knowing what was going on until after the murder had been done, and that he was called into the garage to help dispose of the body; that when the body was being put in the car by Maione, Abbandando and Strauss, the latter struck it with the ice-pick and Maione hacked it on the head with a cleaver. Next, the testimony by Goldman, the taxi-driver, that he saw Rudnick alive as late as 2:30 A. M. Next, the testimony by Lebirto that about midnight, entering the garage office unexpectedly, he saw Strauss suddenly drop a rope which he had been handling, and that later, being puzzled by Rudnick's failure to leave the garage, he entered and searched and he failed to find the rope. Also that when he was playing cards across the street he saw Abbandando and Rudnick with the tan car enter the garage at about 4:30 or 4:45 A. M.; that both Abbandando and Maione had been there about midnight previously. That about ten minutes after Abbandando and Rudnick arrived, Abbandando came out and called Catalano, and that later he, the witness, saw the black car being driven by Catalano leave the garage, followed by Abbandando in the tan Ford and also by others. I do not recall just what the evidence was as to whether or not the others entered Reles' car, so I have not mentioned that. Also the testimony by Satriale having loaned his tan car to Abbandando for several weeks, beginning in April."

The defendants urge that the court committed error when, immediately following the itemization, it said: "Now, gentlemen, those are the points of alleged corroboration of Reles. It is for you and you alone to say whether the evidence on those points *given by the other witnesses mentioned* is true or is not sufficiently shown to be true, *because you are the sole judges of the facts.* But if you find those points to be true, or any of those points to be duly established, then it is for you to say whether *such as you find* to be sufficiently established *are* corroboration *tending to connect the defendants or either of them with the commission of the crime,* as provided by law."

All of this portion of the charge was modified by the words "given by the other witnesses mentioned." Those witnesses were Officer O'Malley, Detective Browser, Maffetore (I think the court meant Catalano), Goldman and Lebirto (Lebito). The charge, as so understood, is substantially correct. I say substantially because the testimony of Officer O'Malley was not corroboration of the testimony of the witness Reles and the testimony of Detective Browser as to the fact that he spoke to Rudnick in the neighborhood a number of times, was not relevant. These were not, however, errors requiring reversal and are not the points in connection with this portion of the charge upon which a reversal is sought. Defendants predicate reversible error upon the last sentence of the charge as quoted *supra,* and upon the use of the word "any" therein. The defendants read that sentence to mean that if the jury found any one of the fifteen items to be true that it might find that item to be sufficient corroboration of Reles' testimony. That is not as I read the sentence. As I read it, the word "any" means "some" and is further modified by the words "given by the other witnesses mentioned." In other words, the jury was told that it was for them to say whether the evidence on the fifteen items given by the other witnesses mentioned, was true or whether any of the items had been established and that then it was for them to say whether *such* as they found to be sufficiently established were ("are")

corroboration tending to connect the defendants or either of them with the commission of the crime as provided by law. As I read the sentence, the word " such " indicates plurality, especially when followed by the word " are " before the word " corroboration." It has been said that the entire charge has to be considered and not a sentence or two of it. In this instance it is not a sentence or two upon which we are asked to reverse this conviction but a three-letter word, " any," in a lengthy charge.

There was not only ample evidence which, if believed by the jury, supplied the required corroboration of Reles but evidence which established the defendants' guilt to the point of demonstration.

The judgments should be affirmed.

LEHMAN, Ch. J., RIPPEY and SEARS, JJ., concur with LOUGHRAN, J.; CONWAY, J., dissents in opinion, in which FINCH and LEWIS, JJ., concur.

Judgments of conviction reversed, etc.