THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOSEPH FEOLO, ALBERT MASTRONE and NORMAN J. BRABSON, Appellants.

Argued November 19, 1940; decided December 31, 1940.

*Samuel Markewich* and *Jerome G. Rosenhaus* for Joseph Feolo, appellant.

*Frederick J. Sullivan, Joseph D. Edelson* and *John T. Hogan* for Albert Mastrone, appellant.

*Howard Hilton Spellman, Caesar B. F. Barra* and *LeRoy Campbell* for Norman J. Brabson, appellant.

*Thomas E. Dewey,* District Attorney (*Stanley H. Fuld* and *Charles W. Manning* of counsel), for respondent.

LOUGHRAN, J.   On September 14, 1931, Sergeant Timothy F. Murphy of the police department of the city of New York was shot and killed when he interrupted three persons in their commission of a robbery in a speakeasy on East Thirteenth street, Manhattan.

Six years later, Emilio Funicello informed the authorities that the robbery in the speakeasy had been committed by Joseph Feolo, Norman Brabson and Carl Summerfeld at the instigation of Albert Mastrone.   These four were thereupon indicted for murder in the first degree.   On a first trial the jury disagreed.   A second trial resulted in a judgment of death which this court affirmed as to Summerfeld but reversed as to Feolo, Brabson and Mastrone (*People* v. *Feolo*, 282 N. Y. 276).

After a third trial of the indictment as against Feolo, Brabson and Mastrone, they now stand convicted a second time of this felony murder.   As on the former appeal, the testimony of Funicello makes the greater part of the record and constitutes a report of various admissions which he said were made to him by one or more of the defendants. " Without his testimony," as the trial judge told the jury, " there would be no case made out against these defendants, or any of them."   Whether Funicello was an accomplice in the robbery at the speakeasy was a question of fact.   In leaving that question to the jury, the trial judge said: " He

denies that he was an accomplice, and if you are convinced beyond a reasonable doubt that he was not an accomplice in the commission of this robbery, then his testimony needs no corroboration * * *. I charge you as a matter of law that if you find that Funicello was an accomplice in the commission of the crime, then his testimony must be supported by other evidence which tends to connect the defendants with the commission of the crime." (See Code Crim. Proc. § 399.) How this issue as to Funicello's status as a witness was composed by the jury we cannot know. Hence, we are called upon to say whether on this record the verdict may be taken as a valid finding that Funicello's testimony was sufficiently corroborated as against each of the three defendants. If as to any defendant the answer is in the negative, the judgment as against him cannot be upheld on the speculation that the jury found Funicello was not an accomplice. (See *People* v. *Lazar*, 271 N. Y. 27.)

Detective Thomas Morgan of the police force of Pittsburg, Pennsylvania, arrested Brabson in that city in November, 1937. Morgan testified that on the day of the arrest a brother of Brabson came to the Pittsburg detective bureau where (as Morgan said) " the brother questioned what he [Brabson] was arrested for, and the defendant answered the brother, he says, ' On a murder charge that happened about six years ago in New York City.' He stated — he said to the brother, he said, ' I thought it blew over, but finally ;oing back to New York City on that charge.' " In 'gment, it would have been proper to submit to the e question whether the testimony of the witness was sufficient to warrant as against Brabson the · that Funicello told the truth when he testified 'o and Brabson came to him on the day Sergeant was murdered and said that with Summerfeld ;ommitted a robbery and " killed a cop * * * ast 13th street at that place that Al [Mastrone] tip to."

In the same part of his testimony, Funicello further quoted Feolo in this manner: " He [Feolo] said he searched one fellow and took a pocketbook off him, took the money out of it and threw the pocketbook on the floor." Philip Albert was in the speakeasy when the robbery and homicide were committed. He testified he handed over his wallet containing forty or forty-five dollars to one of the robbers. The People contend that this evidence of Albert confirms Funicello in his testimonial report of Feolo's admission that Feolo took a pocketbook off one fellow at the speakeasy. I think this contention must be rejected. The corroboration of an accomplice must in some degree confirm him in his designation of a defendant as one who was connected with the commission of the crime. (*People* v. *Hooghkerk*, 96 N. Y. 149, 162.) All the witness Albert said was that somebody in the speakeasy robbed him of his wallet. I cannot see how that evidence tended to connect any identifiable person with the killing of Sergeant Murphy — if the testimony of Funicello is cast out.

Police Officer Frederick Knocke testified that in a nearby street he was shot and wounded by a man who ran from the speakeasy at the time Sergeant Murphy was killed. On his direct examination, Officer Knocke said of Feolo: " I see the man that looks like the man that shot me." On his cross-examination the officer said: " Well, there is something about this man that you can't forget; it was one of those things, you can remember his face a lifetime." The real character and meaning of this testimony of Officer Knocke was, as I believe, correctly declared by the trial judge in these words: " He has not identified Feolo as the man that shot him. He said he only looked like the man who shot him."

Funicello testified that (antecedently the events in issue) he overheard Mastrone plan a robbery that was to be committed in the speakeasy by Feolo, Brabson and Summerfeld. For corroboration of Funicello in that charge against Mastrone, the People offered testimony of an Assistant District Attorney that in July, 1938, Mastrone (who was

then in custody) volunteered the statement that in February or March, 1931, he had pointed out the speakeasy on Thirteenth street to two other men. " He told us [the Assistant District Attorney testified] that at that time his idea was that the place was to be shaken down, that they were going to impersonate Federal officers and extort money from the proprietor because he was conducting a speakeasy." In the same interview, as reported by the Assistant District Attorney, Mastrone denied participation in the robbery which brought about Sergeant Murphy's death.

The People make the argument that Mastrone's " admission that he pointed out the place as a likely spot for the commission of a crime — in spite of his self-serving declaration that he merely intended a ' shakedown '— supports Funicello and his testimony." This, I think, is a dubious proposition. It is true that the jury were not constrained to accept Mastrone's extrajudicial assertion that the place was only to be shaken down. But if that assertion was disregarded, then Mastrone's admission amounted only to a concession that he had pointed out the speakeasy to two men.

The foregoing states the whole of the proof relied upon by the People for confirmation of Funicello's testimony. Except as against Brabson, this corroborative evidence was, as I see it, of little more than conjectural significance.

In respect of the sufficiency of that proof, the trial judge in his charge said to the jury: " It is for you to say where he [Funicello] got the information concerning the robbery as to which he has testified. He alleges that he got the information from the defendants on trial. Does his testimony as to what transpired at the scene of the robbery agree with the testimony of the inmates of the place, and of Officer Knocke as to what happened during and immediately after the robbery was perpetrated? " For reasons already suggested, I think such a test of the credit of Funicello as an accomplice-witness was inadmissible. Since neither Officer Knocke nor any person who was in the speakeasy at the time identified any of the defendants as

a participant in the robbery, the mere agreement of their narrations with Funicello's story was no demonstration of his trustworthiness. If Funicello was himself a participant in the robbery at the speakeasy, he knew the facts of its commission and could readily enough have stated them in the form of the admissions he variously imputed to the several defendants. "A man who has been guilty of a crime himself will always be able to relate the facts of the case, and if the confirmation be only on the truth of that history, without identifying the person, that is really no corroboration at all." (Lord ABINGER, in *R.* v. *Farler*, 8 Car. & P. 106; quoted in Wigmore on Evidence [3d ed.], vol. VII, § 2059, p. 327. See 2 Bishop's New Criminal Procedure, § 1170.) This test of the sufficiency of corroborative evidence — that it shall tend to connect an identifiable person with the crime — has been criticized as a fallacy. (See Wigmore, *supra.*) Our statute, however, has adopted that test (Code Crim. Proc. § 399; *People* v. *Plath*, 100 N. Y. 590; *People* v. *Reddy*, 261 N. Y. 479) and the Legislature has not been persuaded by arguments for its repeal. (N. Y. Leg. Doc. [1937] No. 77.)

In respect of the needed corroboration of Funicello, the trial judge in his charge said to the jury: " Independent and corroborative proof tending to connect the defendants with the commission of the crime is essential but need not be of great probative force." This, it seems to me, was a misconception. " The law of evidence undoubtedly requires that evidence to a jury shall be clearly relevant, and not merely slightly so." (Thayer, Preliminary Treatise on Evidence, p. 516.) More than that, our statutory requirement of corroboration is predicated of the uniform common-law custom of judges to advise the jury that the evidence of an accomplice should be received with great caution. (*People* v. *Hooghkerk, supra.*) In my opinion, the jury should not have been instructed that corroboration of Funicello did not call for evidence of great probative force.

I am impelled to the conclusion that this judgment (even as against Brabson) may well have been the result

of a wrong application of the statute which says that a conviction of crime cannot rest solely on the credit of a witness found to have been an accomplice.

As to each defendant, the judgment of conviction should be reversed and a new trial ordered.

FINCH, J. (dissenting). On a previous appeal, we expressly agreed with the contention of the District Attorney that " The uniform consistency with which Funicello's trial testimony tallies in its details with those confessions [Summerfeld's] is cogent proof of its veracity and accuracy." (282 N. Y. 276, 281.) A new trial has been had for the three defendants other than Summerfeld and a second jury, without recourse to the confessions of Summerfeld, have again found the defendants guilty upon ample evidence. We need not speculate whether the jury found Funicello to be an accomplice or not, for it is submitted that his testimony setting forth in minute detail the perpetration of the crime is corroborated by independent evidence as to each of the defendants. The corroborative evidence need not show the commission of the crime. (Code Crim. Proc. § 399; *People* v. *Mayhew*, 150 N. Y. 346, 353; *People* v. *Swersky*, 216 N. Y. 471, 480; *People* v. *Cohen*, 223 N. Y. 406, 426; *People* v. *Dixon*, 231 N. Y. 111, 116; *People* v. *Reddy*, 261 N. Y. 479, 484.) The corroboration is not restricted to any particular point and may vary according to the circumstances of the particular case. Matters in themselves of seeming indifference may so harmonize with the narrative of the accomplice as to furnish the tendency to connect the defendant with the commission of the crime. (*People* v. *Becker*, 215 N. Y. 126, 139, 140.)

It is submitted that as to Feolo, the independent evidence tending to connect him with the commission of the crime is, upon the record, stronger than that concerning Brabson. An officer of the New York City Police Department, one Frederick Knocke, identified Feolo as the man who shot him while fleeing from the scene of the murder. Speaking of Feolo, Officer Knocke testified: " Well, there is something about this man that you can't forget; it is one of

those things, you can remember his face a lifetime." The record shows Officer Knocke was a careful witness. Instead of testifying as do many witnesses to the conclusion, "That is the man," he first testified to the facts from which the ordinary witness draws the conclusion, namely, "I see the man that looks like the man that shot me." Questions and answers of Officer Knocke were as follows: "Q. Do you see in this courtroom the man who shot you? A. Yes, sir. Q. Will you point him out. A. That man sitting next to the court attendant looks like the man that shot me. * * * Q. So that the record may be clear, which man were you pointing to? A. To that man sitting there, wearing the glasses, next to the court attendant, sitting to the left of the court attendant."

Any doubt as to what the officer meant was removed when, upon cross-examination, he was asked to qualify his testimony and said: "A. Well, I told him I want to be absolutely sure — Q. That's right. A. I was absolutely sure that he looks like the man. * * * Q. You appreciate the fact, do you not, that there are any number of persons who look alike and who resemble others — resemble one another? A. Well, this — Q. I mean, just answer the question. You know that to be a fact, as a police officer, do you not? A. Well, there is something about this man that you can't forget; it is one of those things; you can remember his face a lifetime."

It was for the jury to weigh this evidence and, if believed, to be satisfied it tended to connect this defendant with the commission of the crime. In *People* v. *Strollo* (191 N. Y. 42, 62) the witness said that "the defendant resembled the man Strollo" except that the defendant was stout and had a moustache. Later, on being shown a photograph of the defendant, the witness declared: "That picture resembles the man whom I have seen before * * * under the name of Strollo." The court in affirming the judgment of conviction of murder held that this testimony was evidence of identification. When the testimony of Officer Knocke is read as a whole, as we are compelled to do, it is impossible

to say that it does not connect the defendant Feolo with the commission of the crime.

As to Mastrone, there is likewise evidence independent of the testimony of the accomplice tending to connect him with the commission of the crime. This defendant, at his own request, sought an interview with the District Attorney. He volunteered the statement that he had " fingered " this speakeasy as a suitable place for a crime. This statement included a self-serving declaration, a denial that he had selected the place for this robbery, but rather for an extortion as the proprietor was an ex-convict who would fear to complain. Mastrone admitted that he had made more than one inspection of the physical condition of these premises. The jury were entitled to disbelieve his denial and draw the inference from the affirmative evidence in the admission that Mastrone had selected this place for this robbery since if the crime were extortion, no inspection would be necessary, whereas, if a holdup were intended, then a get-away was necessary and an inspection to facilitate such get-away became essential. (*People* v. *Johnson*, 185 N. Y. 219; *People* v. *Demasco*, 240 N. Y. 170.)

It is submitted that upon this record, if the jury found Funicello to have been an accomplice, there is independent evidence to inculpate defendants Feolo and Mastrone as well as Brabson in the commission of the murder.

Error is claimed in that sentence in the charge wherein the trial judge said to the jury, " Independent and corroborative proof tending to connect the defendants with the commission of the crime is essential but need not be of great probative force." When the sentence referred to is read in connection with the charge as a whole on the subject of corroboration, no error is present. In using the sentence objected to, the court was obviously referring to the fact that the corroborative evidence was needed not in reference to the case as a whole, but only to some material fact. In the sentence in the charge immediately following the sentence objected to, the court said that the whole case need not be proved by the independent testimony, but only

evidence from an independent source of some material fact tending to connect the defendant with the commission of the crime. In no event has there been shown to be any error here affecting substantially the rights of the parties. (Code Crim. Proc. § 542.) The convictions should be affirmed.

LEHMAN, Ch. J., and RIPPEY, J., concur with LOUGHRAN, J.; FINCH, J., dissents in opinion, and votes to affirm the convictions of all the defendants, in which LEWIS, J., concurs; SEARS, J., dissents only as to the defendant Brabson; CONWAY, J., concurs in the opinion of FINCH, J., as to the defendants Feolo and Brabson but votes to reverse and for a new trial as to the defendant Mastrone upon the ground that there is no corroboration as a matter of law.

Judgments of conviction of Feolo and Mastrone reversed and new trials ordered.

Judgment of conviction of Brabson affirmed.