THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* GLENN G. PAULEY, GEORGE F. TOURJIE and RAYMOND J. SMITH, Appellants.

Fourth Department, January 16, 1953.

*William B. Mahoney* for George F. Tourjie, appellant.

*Frank G. Raichle* for Glenn G. Pauley and Raymond J. Smith, appellants.

*Gordon Steele, District Attorney (Leonard Finkelstein* of counsel), for respondent.

KIMBALL, J. The defendants were indicted on eighty-five separate counts for conspiracy, bribery, taking unlawful fees and extortion. The extortion counts were dismissed by the trial court. The defendants were convicted by the jury on the conspiracy count and of the several charges of bribery and

taking unlawful fees. As sentenced by the court, each defendant faces one year imprisonment for the conspiracy and seven to fifteen years, in addition, on the felony convictions of bribery and taking unlawful fees. The defendants appeal from the judgments of conviction, from the order denying the motions to set aside the verdict and for a new trial, and also from an order denying a motion for a new trial on the ground of the misconduct of a juror. Certificates of reasonable doubt were granted and bail fixed at $35,000.

We are in accord that there were errors of law which would, without doubt, constrain this court to reverse and order a new trial. One such error was the refusal of the court to examine the Grand Jury testimony of certain witnesses for the People so as to determine whether to make the same available to the defendants for use upon the cross-examination of such witnesses to test or impeach their credibility. We need not, however, dwell at any length upon this or other alleged errors during the trial for the reason that there was such flagrant misconduct on the part of a member of the trial jury as to require the verdict to be set aside and a new trial had in any event. While we are of opinion that the judgments of conviction must be reversed and the indictments dismissed, we deem it advisable to comment briefly upon the order which denied the defendants' motion for a new trial on the ground of the juror's misconduct upon her *voir dire* examination and her failure to comply with the instructions of the court during the course of the trial.

The court held no hearing upon the motion, as is the customary practice, but the defendants may not be heard to complain, as they submitted the matter upon affidavits and the facts are not in dispute. The juror was called and sworn as Wanda Pitroniak. Upon her examination touching upon her qualifications to sit as a juror, she said she was a " Miss " and lived with her mother; that she had one brother who was employed by Bethlehem Steel; that her brother's name was the same as hers. She said she had lived in Buffalo all her life; that she was not acquainted with any members of the Buffalo police department; that she never had a direct interest of any kind in a criminal prosecution. She said she knew of no reason not touched upon by the attorneys, of which they should be apprised " in order to make a determination upon yourself as a qualified juror in this case."

After the trial, she made a statement to the District Attorney which, in affidavit form, was used in opposition to the defendants' motion. In this statement, she said she had lived in Buffalo

about six years and had lived in Lackawanna. Instead of being a single woman, it appears that she was married to Frank Petroniak and had a child. Her husband had been a policeman on the Buffalo police force. She had gone to City Court on three occasions to obtain support for the child. When she went into training as a nurse, it was under the name "Miss Walczak." Her affidavit discloses that she had another brother, Paul, who got into trouble in 1946 or 1947, but that, he being a youthful offender, she did not think about it as criminal proceeding. She arranged bail for him. As to her brother John having the same name as hers, she said that he "is Walczak and I am Walczak too." From the records used upon the motion, it is established that the juror was still married to Frank Petroniak; that she had sworn out warrants for his arrest and had testified against him. It further appears that her husband was a Buffalo patrolman from October, 1943, to January, 1946, when he was dropped from the rolls, and that he had served under two of the defendants. She had borrowed money from the police credit union and a judgment was taken against her for nonpayment and a garnishee execution issued.

The answers given by the juror upon the *voir dire* examination were misleading, evasive and false. Whether she had some ulterior motive for concealing her true status and past experience is of no moment. The fact remains that she was permitted to sit as a juror upon the faith of her answers. The defendants were entitled to a full and fair disclosure of the facts without which they could not determine whether to accept or reject her. More than this, although admonished by the court repeatedly to report any attempts made to talk with jurors about the case, she said she had telephone calls of a threatening nature from persons unknown during the trial and after. She was frightened, but she did not report these calls to the court or to the District Attorney. What effect these threats had upon her vote, we do not know, but a verdict under such circumstances cannot be upheld. It was not necessary for the defendants to show that the juror's conduct upon her examination and during the trial influenced the verdict. If it was likely to do so, it was sufficient to warrant the granting of the motion. (*Payne v. Burke*, 236 App. Div. 527.) The juror was unfit to sit. The rights of the defendants were prejudiced by the false answers and concealment of facts. They were entitled to a trial by a jury above suspicion of prejudice and coercion. (*Clark v. United States*, 289 U. S. 1; *People v. Leonti*, 262 N. Y. 256; *People v. Bishop*, 66 App. Div. 415.)

We do not order a new trial, however, for the reason that there was a failure of proof of the crimes charged in the indictment. The testimony of conceded accomplices has not been corroborated as required by section 399 of the Code of Criminal Procedure. The principal witness for the People was a man named John H. Winfield. He is the witness who testified that over a period of about a year he paid money to each of the three defendants, two of them police captains and one deputy police commissioner. This man had been granted immunity. He admitted he had testified falsely before the Grand Jury. Upon the trial his testimony was haltingly given; it was evasive and indefinite. He was in difficulty with the Government in regard to his income tax. He had a good motive for attempting to show that the money which came into his hands and under his control, as president of the Western New York Operators' Association, was passed along to other persons. This operators' association charged its members, who were in the amusement device business, including pinball machines, $7 a month per machine. Of this, only $1 went into the association treasury. The balance was delivered to the president who made no account of it. Thus was built up a fund from which, as Winfield testified, he paid the police officers. For the month of December, 1949, one Bergman, as he testified, did the paying. He is also an accomplice.

There is little in Winfield's testimony besides the statement that he paid money to the defendants. He said the funds in his hands were for a few political contributions, for handling disputes among operators and '' to keep good will among the members of the Association.'' He testified to nothing in reference to any agreement he had with the defendants or that any one of them promised to do anything for him or his association. As part of the People's case, testimony was given by numerous witnesses who had pinball machines in their stores or taverns and that they operated on so-called '' free play.'' It was established that during the year 1950 and until early in 1951, there were large numbers of pinball machines all over the city of Buffalo and that these machines were gambling devices or readily convertible into such and therefore within the ban of the statute. The mechanics of the machines was described by police experts. It was shown by the police commissioner that in July, 1948, an order went out to precinct captains informing them that free play pinball machines were within the purview of section 982 of the Penal Law and that such machines must be seized. The police commissioner testified that on March 2,

1951, there was an order to seal all machines and on March 5, 1951, an order to seize them.

Assuming the jury believed the testimony of the accomplices, particularly that of Winfield, such testimony was required to be corroborated " by such other evidence as tends to connect the defendant with the commission of the crime." (Code Crim. Pro., § 399.) We find no such other independent evidence in this record which can be said to fulfill this requirement of the statute, either as to bribery, taking unlawful fees or conspiracy. The crimes charged in this indictment are not crimes the body of which could exist without the defendants being connected therewith. As was said in *People* v. *Mullens* (292 N. Y. 408, 416) : " proof of the body of the crime was here the same thing as proof of guilty connection with it." In other words, the crimes of bribery, taking unlawful fees or conspiracy cannot here exist unless the defendants are shown to be connected with such crimes. Here the alleged corroborative evidence does not tend to connect the defendants with the crimes unless it is used in relation to the testimony of the accomplices. " ' The *independent* evidence must be material evidence *other* than that of the accomplice * * * It may not depend for its weight and probative value upon the testimony of the accomplice. It need not, alone and by itself, establish that defendant committed the crime. But where the corroborative evidence standing alone has no *real* tendency to connect defendant with the commission of the crime, it is insufficient.' " (*People* v. *Goldstein,* 285 N. Y. 376, 382–383, citing *People* v. *Kress,* 284 N. Y. 452, 460; *People* v. *Maione,* 284 N. Y. 423, 425; *People* v. *Feolo,* 284 N. Y. 381, 386, 388; *People* v. *Reddy,* 261 N. Y. 479, 484, and *People* v. *Dixon,* 231 N. Y. 111, 116.)

As we view this case, we do not think there is independent evidence which tends to connect these defendants with the commission of the crimes charged. Such independent evidence as there is has no weight or probative value except as it depends upon the testimony of the accomplices. The fact that there were illegal machines in the precincts is no corroboration of bribe taking or conspiracy, nor is the fact that there was a 1948 order to seize illegal machines. Subsequent to such order, under an ordinance of the city, pinball machines were duly licensed for $15 a year by the director of licenses, after inspection and approval of the city sealer. They were located at places on the approval of the police commissioner. These defendants had nothing to do with either the licensing or the locating of the hundreds of machines in operation. They were

not notified when or where the machines were placed in the precincts. In such circumstances, the fact that there were machines so licensed and located in the respective precincts was not even proof of neglect of duty on the part of these defendants. Also, the internal financial affairs and operations of the amusement association, a membership corporation under the laws of the State, were of no concern to the defendants, and there is no proof that any one of the defendants had any knowledge thereof. In fact there was nothing illegal in and of itself in an arrangement between the members of the association to make two separate funds from the money collected from members. Merely because Winfield controlled sizeable sums of money is in no way corroboration of his testimony that he gave it to defendants. Certainly the possession of money by him is not independent evidence which tends to connect defendants with the commission of these crimes. There is no probative value to such evidence, unless it is made to depend upon Winfield's testimony which may not be done. The respondent contends that the testimony of the several defendants before the Grand Jury under waiver of immunity is alone sufficient corroborative evidence to satisfy the statute. We do not so view that testimony. Each defendant flatly denied the charges and there are no admissions which could be considered corroborative of bribe taking or conspiracy. The jury was asked to draw the inference that the defendants were derelict in their duties because there were some pinball machines in the precincts which had been duly licensed by the city. From this inference, it is urged that a second inference should be drawn that they were paid to neglect their duty. Inference may not be based on inference.

We hold, therefore, that the testimony of Winfield and Bergman that they paid money to the defendants has not been corroborated according to the requirement of the statute and that there is insufficient evidence to make out any conspiracy between the defendants themselves or between any one of the defendants and Winfield or Bergman.

While not important in view of our decision, we call attention to the sentence imposed upon each defendant. The bribery counts and the taking of unlawful fees counts are based upon the same acts or transactions. The defendants have been sentenced from three and one-half to seven years for both bribery and taking unlawful fees. This may not be done. '' An act or omission which is made criminal and punishable  *  *  *  by different provisions of law, may be punished under any one of

those provisions, but not under more than one." (Penal Law, § 1938; *People* v. *Goggin,* 256 App. Div. 995, affd. 281 N. Y. 611; *People* v. *Murphy,* 256 App. Div. 995, affd. 281 N. Y. 611; *People* v. *Morel,* 258 App. Div. 971; *People* v. *Florio,* 301 N. Y. 46, 54.)

It follows that the judgments of conviction and orders should be reversed on the law and the indictment dismissed.

All concur. Present — TAYLOR, P. J., McCURN, VAUGHAN, KIMBALL and WHEELER, JJ.

Judgments of conviction and orders reversed on the law and indictment dismissed.