In the Matter of GLENN G. PAULEY, Petitioner, against J. RAYMOND McGOVERN, as Comptroller of the State of New York, Respondent.

Third Department, July 7, 1955.

*Gilbert J. Pedersen* for petitioner.

*Jacob K. Javits, Attorney-General (Milton Alpert, Henry S. Manley* and *George H. Rothlauf* of counsel), for respondent.

BERGAN, J. The petitioner, a member of the New York State retirement system, applied to the State Comptroller for discontinued service retirement allowance under section 77 of the Civil Service Law. The Comptroller, after a hearing, disapproved the application on finding that the petitioner was not discontinued from service through no fault or delinquency on his part.

The statutory right to the benefits here sought depends on a discontinuance in the service " through no fault or delinquency " on the part of the member (§ 77). Petitioner before January 2, 1950, held the position of police captain in the city of Buffalo in the classified branch of the civil service. On that date he was appointed as deputy commissioner of police, a position in the exempt class.

Although the charter of the city (Buffalo City Charter, § 456; Local Law No. 4, 1927 [published in Local Laws, 1932, p. 21], as amd.) may be read as providing that he thereupon vacated the office of police captain on appointment as deputy commissioner, section 222 of the Charter requires, in effect, that upon removal of a deputy commissioner who was a member of the police department when appointed, the officer is entitled to restoration in the place in the police department occupied before appointment as deputy commissioner.

On March 26, 1952, judgment of conviction of conspiracy, bribery and taking of unlawful fees was entered against peti-

tioner in the Supreme Court. His appointment as deputy commissioner was rescinded and he was removed from office in the police department by the appropriate public authority on April 25, 1952. The judgment of conviction was thereafter reversed on appeal (*People* v. *Pauley,* 281 App. Div. 223) and the indictment dismissed.

Petitioner then requested reinstatement as deputy commissioner which was refused; and he instituted in the Supreme Court a proceeding to require reinstatement as deputy commissioner, or, in the alternative, as captain of police. The proceeding was dismissed on the merits (*Pauley* v. *Noeppel,* 120 N. Y. S. 2d 472).

Thereafter the commissioner of police offered to restore petitioner to the position of captain in the department. Petitioner refused this offer on grounds he regarded as sufficient, largely because he felt reinstatement should be to the position of deputy commissioner.

The power of the police commissioner to remove a deputy was unconditional and discretionary under the Buffalo Charter, and such removal in petitioner's case, as it has been seen under section 222 of the Buffalo City Charter carried with it a right to reinstatement as captain in the classified branch of the service. Upon removal as deputy commissioner, when this is considered alone, petitioner would not be deemed to be " discontinued from service " within the intent of section 77, but in effect would be deemed transferred to another division of the civil service. The " discontinuance " from service, in the petitioner's case, was the act of removing him also from the rolls of the police department which removal terminated his public employment and his right to be transferred back to the position of police captain.

Such a discontinuance on April 25, 1952, when the judgment of conviction stood of record in the Supreme Court should not be deemed a discontinuance " through no fault or delinquency ". While it stood, the judgment was prima facie evidence of fault, at least. The appointing power was required by law to remove petitioner on conviction of felony (Public Officers Law, § 30, subd. 5). Petitioner and the appointing officer were both bound to treat the judgment as requiring such removal. Upon reversal of the conviction, the removal from the classified civil service position of police captain either had to be remedied by the commissioner by making a reappointment; or misconduct shown independently before the commissioner in justification of not making a reappointment; or the employee would be entitled to retirement benefits on meeting the length of service and other qualifying requirements of the statute.

There is in this record no independent proof of misconduct. When the commissioner offered petitioner reinstatement to the position to which he would have been entitled to have been transferred if he had been removed as deputy commissioner without the existence of a judgment of conviction, the appointing officer restored to petitioner all the rights he had regained within the civil service establishment of the City of Buffalo.

There is a suggestion in the proceeding before us that the offer of reinstatement by the commissioner was qualified by conditions attaching to it in respect of release of the city and the commissioner from liability and with reference to back salary which petitioner was not required to accept. But the record made before the Comptroller is clear on the point that an unqualified offer of reinstatement as captain was made in writing to petitioner and renewed again at a later date and acceptance was refused because of the difference in salary between deputy and captain and because petitioner felt he would lose prestige in taking reappointment as captain.

Petitioner testified in general terms that the offer of reinstatement made to him and to two other police officers was " on the basis " of waiving claim to back pay; but the official documents show an unconditional offer made to petitioner who did not testify, in any event, that this was a ground for his refusal to accept the offer. To the extent there is an issue of fact on this aspect of the case, it is deemed resolved by the Comptroller against petitioner.

This unconditional offer of restoration left petitioner entirely free to claim, or litigate a claim, for whatever salary, if any, he might be entitled to as a matter of law during the period of his separation from the service. One way or another, such a right would not reach the question that becomes important in considering retirement benefits, whether there was a voluntary discontinuance by reason of a refusal to accept the offer of restoration. That is the vital question here.

The removal from one office in which there is a right to reinstatement to another is not a separation from the service where the reinstatement is made or offered at an appropriate time. We regard a reasonable period after reversal of the conviction and the termination of civil proceedings instituted by petitioner himself, as an appropriate time for such offer of reinstatement. Such a reasonable period is shown in respect of this offer.

The voluntary election of petitioner not to accept the offer of reappointment constitutes the discontinuance from the service in the light of sequence of events in this record. The expression

" discontinued " through no fault or delinquency used in section 77 does not mean discontinuance by the voluntary choice of the member. The discontinuance from service in this sequence of events exists because petitioner has declined to be restored to the position in the civil service he would be entitled to have had there been no conviction. We agree with the Comptroller that petitioner's declination of appointment constitutes a voluntary withdrawal from the service.

The determination should be confirmed, without costs.

FOSTER, P. J., COON, IMRIE and ZELLER, JJ., concur.

Determination confirmed, without costs. [See *post*, p. 981.]