(August 23, 1984)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH M. ALBRIGHT, JR., Appellant. — Appeal from a judgment of the County Court of Montgomery County (White, J.), rendered January 13, 1981, upon a verdict convicting defendant of the crimes of bribery in the second degree, conspiracy in the fifth degree and criminal facilitation in the fourth degree.

The testimony at trial showed that defendant, the personnel officer of Glen-Mohawk Milk Association, participated in a discussion with a State sales and use tax auditor named Donald Wert to review combined tax deficiencies of $76,089 against his employer and its subsidiary, Union Street Transport, Inc. Subsequent meetings culminated in an offer by defendant to give the tax auditor $10,000 in exchange for reduction of the deficiencies to a total of $19,000. The auditor notified his superiors. The payment transaction was observed by the police and defendant was then arrested. At trial, defendant alleged that although he never informed the police or the State Department of Taxation and Finance, he participated in the Wert transaction only to obtain evidence of a bribe taken by a public official. Defendant was convicted as charged and sentenced to concurrent jail terms of one year on each count.

Defendant first argues that the prosecutor's misconduct was so egregious as to deny him a fair trial. We disagree. The prosecutor's questioning of Wert concerning conversations with one Vito Veneroso was simply for the purpose of explaining why Wert was equipped with a recording device at the time he met with defendant. The substance of those conversations was never introduced. On cross-examination, defendant also denied that he

spoke with one Lewis Gowdie, an employee at Glen-Mohawk, about Veneroso, Wert or the tax audit. The prosecutor then discontinued this line of questioning. There was no attempt to offer either evidence or inferences of uncharged and unrelated crimes (see *People v Ventimiglia,* 52 NY2d 350, 359; cf. *People v Thompson,* 75 AD2d 830). Moreover, the trial court adequately charged the jury not to be concerned with or to speculate about references to other incidents or persons. This was adequate to dispel any harm (cf. *People v La Susa,* 87 AD2d 578, 579). Nor do we find error in the cross-examination of defense witness Glen H. Chandler, who defendant asked to photograph the payment transaction with Wert. Chandler candidly admitted that his testimony at trial differed from his prior written statement given to the police. While a witness has no duty to voluntarily report exculpatory information to the authorities, and it is error to elicit proof of a failure to come forward (see *People v Knox,* 71 AD2d 41, 48), information of this type may be used to impeach the veracity or credibility of a witness if a proper foundation has been laid (*People v Dawson,* 50 NY2d 311, 321; *People v Phillips,* 75 AD2d 735, 736-737). Here, the cross-examination was properly designed to suggest that Chandler's testimony was recently fabricated. Although not requested, the trial court adequately charged that the failure to volunteer exculpatory information was to be considered by the jury only insofar as it related to the credibility of the witness (see *People v Dawson, supra,* pp 322-323). Nor did the trial court abuse its discretion in permitting cross-examination of defendant's character witness, John C. Boshart, to the extent that reversal is required (see *People v Caviness,* 38 NY2d 227, 232). Finally, although the prosecutor made improper comments during summation about defendant's character witnesses (see *People v Bouton,* 50 NY2d 130, 139-140), and made reference to the "Abscam" case, we do not deem these errors, when taken in context of the entire trial, so egregious as to mandate reversal and a new trial (see *People v Johnson,* 47 NY2d 785, 787, cert den 444 US 857; *People v Hopkins,* 86 AD2d 937, 940, affd 58 NY2d 1079).

Defendant next contends that the trial court erred in charging the affirmative defense of entrapment because it was neither raised, proven nor requested. We disagree. A defendant is not compelled to admit intent prior to invoking the defense of entrapment (see *People v Johnston,* 47 AD2d 897, 900). The record shows that the trial court meticulously instructed the jury as to the People's burden of proving guilt beyond a reasonable doubt before there could be any consideration of the entrapment defense (see *People v Fournier,* 70 AD2d 491, 494; cf.

*People v Johnston, supra).* We further note that counsel repeatedly alluded to entrapment throughout summation without specifically mentioning the word, thereby justifying the jury instructions. We also find that the trial court properly instructed the jury with respect to the elements of each crime charged, including the requirement that the People prove intent beyond a reasonable doubt *(People v Satisfield,* 68 AD2d 817). The trial court's instructions did not serve to shift the burden of proof on intent (see *People v Getch,* 50 NY2d 456, 463-464).

We further find no abuse of discretion by the trial court in sentencing defendant to concurrent one-year terms of imprisonment *(People v Ceijas,* 56 AD2d 970, 971; *People v Dittmar,* 41 AD2d 788, 789). The sentence was well within the relevant statutory provisions and tailored to enable defendant to serve his sentence in the county jail, instead of a State prison.

One further point requires our attention. Defendant urges that the trial court erred in denying his presentence motion to set aside the verdict pursuant to CPL 330.30 (subd 2) on the ground of juror misconduct. We disagree. The motion was based, essentially, on the contention that two jurors failed to disclose the details of an employment relationship between defendant's employer and a member of each juror's family that would have warranted a challenge for cause or defendant's use of a peremptory challenge. To successfully object to a juror after a verdict, a party is required to demonstrate that the objectionable conduct was unknown to him beforehand, and that it would not have been disclosed by a proper inquiry before the jury was sworn *(People v O'Keefe,* 281 App Div 409, 415, affd 306 NY 619). In our view, proper inquiry during *voir dire* would necessarily have disclosed the nature of the subject employment relationships. In effect, defendant's supporting affidavits failed to establish a legal basis for the motion, which the trial court properly dismissed without a hearing (CPL 330.40, subd 2, par [e]).

Judgment affirmed.

Kane, Casey, Weiss and Levine, JJ., concur.

Mahoney, P. J., concurs in the following memorandum. Mahoney, P. J. (concurring). While I agree with the majority that the judgment should be affirmed, I do not agree with the reason for affirming the denial of defendant's CPL 330.30 motion. Affidavits produced by defendant in support of the motion allege that family members of two of the jurors had relationships with defendant's employer, one of which did not terminate amicably, which would have warranted a challenge for cause. Additionally, one of the jurors is alleged to have expressed negative feelings regarding defendant. The record does not support any

claim that this objection was waived. Defense counsel did conduct a *voir dire* which inquired whether any of the prospective jurors had connections, directly or through family members, with defendant or Glen-Mohawk Milk Association. The jurors were also questioned regarding any predispositions in the case. Thus, it can hardly be said that a proper inquiry would have revealed the true facts regarding these two jurors.

Turning to the merits, it is my view that, even if defendant's allegations are correct, they do not warrant vacatur of the verdict due to improper conduct of jurors. One of the jurors admitted on *voir dire* that her daughter had been employed by Glen-Mohawk. She stated that the employment relationship terminated amicably. Affidavits produced by defendant now show that the juror's daughter was fired after one day of work. The possible bias created by this situation is doubtful. Certainly it does not entail the sort of bias involved in *People v Harding* (44 AD2d 800), where it was learned after trial that one of the jurors was aware that the defendant had had an affair with the juror's wife. The same is true of the other allegations of bias. These include hearsay allegations that the same juror stated that she thought defendant was guilty and that another juror had a son who had worked for Glen-Mohawk. While these allegations may, if true, raise some possibility of bias such as to warrant a challenge for cause, they do not rise to the level appropriate for vacatur of the verdict. Moreover, while the answers given by the two jurors on *voir dire* may not have been entirely accurate, they certainly do not amount to "improper conduct" which is required for a CPL 330.30 motion. Thus, the motion was properly denied on the merits.