OPINION OF THE COURT
Felice K. Shea, J.
Defendants move pursuant to CPL 330.30 for an order setting aside the verdict against them and granting a new trial on the ground that a juror, by withholding relevant information during voir dire, engaged in conduct so improper and prejudicial that defendants were deprived of a fair trial.
On May 15, 1986, defendants, who are police officers, were found guilty of bribe receiving in the second degree and two counts of official misconduct. Defendants allege, and the prosecution concedes, that juror No. 3, Lillian Feeley, did not reveal her affiliation with the Queens County District Attorney’s office during jury selection. The parties disagree as to whether Miss Feeley’s failure to disclose requires nullification of the verdict.
Before the voir dire, Miss Feeley came up to the Bench and talked off the record with the court and the attorneys. During jury selection, the court asked all prospective jurors whether they held paid or volunteer jobs with a law enforcement agency such as the District Attorney’s office. The court also took pedigree information from each prospective juror. The defense attorneys requested and were given permission to interview each juror on the panel individually out of the hearing of the other jurors.
Before and during the questioning by the court and the attorneys, Miss Feeley said several times that she was a volunteer worker in a court watcher’s program. She described the nature of her work, but she did not state that the program was sponsored by the District Attorney of Queens County. That information came to light in an interview conducted by an investigator hired by defendants and taped without Miss Feeley’s knowledge.[1]
The court conducted a hearing on July 23, 1986 at which *394 testimony was taken from Miss Feeley and from Mr. Leo Meindl, Miss Feeley’s supervisor in the court watcher’s program. They were both credible witnesses who testified candidly and without substantial contradiction.
The hearing evidence shows that John J. Santucci, District Attorney of Queens, sponsors a court watcher’s program that utilizes volunteers, many of whom are senior citizens, to monitor proceedings in the Criminal Court of Queens County. Miss Feeley applied to be a court watcher in January 1986 as a result of a newspaper article describing the program. She worked each Thursday from 9:00 a.m. to 1:00 p.m. until May 1986 when she started jury service. Her contact with the court watcher’s program was exclusively with Mr. Leo Meindl, her supervisor, and she never met Mr. Santucci or any Assistant District Attorney in the course of her work.
Volunteers are given one-page forms to fill out in which the court’s starting time, the time of lunch, the times of recesses and the time of adjournment are to be entered. The number of cases on the calendar, the number adjourned and the number of dispositions are also noted on the form and there is a space at the bottom for comments. Miss Feeley’s comments, as summarized in reports kept by the court watcher’s office, reveal no pro-prosecutorial bias. The monitors are instructed not to concern themselves with legal matters. The forms used by Miss Feeley, the handbook distributed to volunteers and Miss Feeley’s court watcher identification card carried the name of John J. Santucci and his title of District Attorney.
The court watcher’s program is operated by the community relations arm of the District Attorney’s office. It has an office separate and on a different floor from the investigation and enforcement sections of the prosecutor’s office. The role of the District Attorney is played down and the service that the volunteers are performing for the public is emphasized. Meetings for court watchers are held periodically, but Miss Feeley attended no meetings during the months of her service in the program.
The court’s authority to set aside a verdict is governed by CPL 330.30 which provides in pertinent part:
"At any time after rendition of a verdict of guilty and before sentence, the court may, upon motion of the defendant, *395 set aside or modify the verdict or any part thereof upon the following grounds * * *
"2. That during the trial there occurred, out of the presence of the court, improper conduct by a juror * * * which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict”.[2]
The statute, as drafted, is directed at improper conduct by a juror "out of the presence of the court”. Here, the failure by a juror to state her affiliation with the District Attorney occurred during voir dire in the presence of the presiding Judge and all counsel. Neither party has addressed this barrier to the defense motion and the case law appears to ignore it as well (see, e.g., People v Albright, 104 AD2d 508, revd on other grounds 65 NY2d 666) perhaps because there is an overriding constitutional right to an impartial jury and a fair trial. (US Const 6th, 14th Amends; NY Const, art I, § 6; People v Harding, 44 AD2d 800.)
There are but a handful of cases challenging a verdict on the ground that a juror failed to disclose information at voir dire. The tests for determining when such an alleged impropriety affects a substantial right of a defendant are ill-defined.
A juror’s concealment of his prejudice against persons of the defendant’s national origin mandated a new trial in People v Leonti (262 NY 256).[3] In People v Howard (66 AD2d 670), a new trial of a gambling charge was ordered when a posttrial hearing revealed that a juror had been working with the District Attorney’s office in the investigation of gambling and the juror had become an informer because he needed police protection from bookmakers to whom he owed money. In People v Harding (44 AD2d 800, supra), a new trial was required when a juror concealed the fact that he knew defendant and harbored a grievance against him because the defen *396 dant had "run around” with the juror’s wife. The Fourth Department found that a new trial should have been ordered for a police officer defendant when a juror gave false answers on voir dire and concealed her marriage and litigation with a policeman. (People v Pauley, 281 App Div 223 [dictum].)
On the other hand, on facts more similar to the case at bar, two cases found the right of a defendant to a fair trial unaffected by the failure of a juror to disclose that he had been a member of the auxiliary police force. (People v Childs, 56 Misc 2d 581; People v Winship, 2 AD2d 952, affd 2 NY2d 944.) In a recent case, two jurors failed to disclose details of an employment relationship between defendant’s employer and a member of the two jurors’ families. The court held that no substantial right of the defendant was violated. (People v Albright, 104 AD2d 508, revd on other grounds 65 NY2d 666, supra.)
In determining whether a substantial right of the defendant has been affected, judicial attention has focused on whether the new information, if timely divulged, would have formed the basis for a peremptory defense challenge and/or a challenge for cause. (See, e.g., People v Morales, 121 AD2d 240, 243 [1st Dept] [dissent]; People v Howard, 66 AD2d 670, supra.) Since a peremptory challenge is an objection for which no reason need be assigned (CPL 270.25 [1]), recognizing a right to invalidate the verdict because information withheld may have impelled a defendant to exercise a peremptory challenge is to permit postconviction claims which are difficult to evaluate.
A more helpful standard for determining when a defendant’s rights have been compromised by a juror’s omissions at voir dire is to inquire whether, upon the facts uncovered, denial of a challenge for cause would have been error. CPL 270.20 (1) (b) allows a challenge for cause where a juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial”.
It is an accepted principle that before trial it is wise for a Trial Judge to err on the side of disqualification since "the worst the court will have done * * * is to have replaced one impartial juror with another impartial juror.” (People v Culhane, 33 NY2d 90, 108, n 3; accord, People v Torpey, 63 NY2d 361, 369, rearg denied 64 NY2d 885; People v Blyden, 55 NY2d 73, 78; People v Branch, 46 NY2d 645, 651-652.) In looking back after a verdict has been rendered, the Trial Judge should *397 carefully assess whether the new facts foster a belief that it is likely the juror did not deliberate impartially. A jury verdict should be set aside only for compelling reasons. (McDonald v Pless, 238 US 264; People v Phillips, 87 Misc 2d 613, 631, affd 52 AD2d 758, lv denied 39 NY2d 949; Tanner v Stim, 66 Misc 2d 1030; People v Maynard, 80 Misc 2d 279.) There must be the likelihood of actual bias or circumstances from which bias can be inferred. A remote possibility of bias does not warrant vacatur of a verdict. (See, e.g., People v Thompson, 198 NY 396, 401-402; People v Rhodes, 92 AD2d 744; People v Uribe, 113 Misc 2d 207.)
It is noteworthy that under CPL 330.30 (2) defendants must show not only improper conduct of a juror affecting a substantial right, but also that the impropriety was unknown to them prior to verdict. The courts, in rejecting defense claims based on a juror’s failure to disclose at voir dire, have interpreted the statute to encompass conduct which could have been brought to light by proper inquiry before the jury was sworn. (People v Albright, 104 AD2d 508, 510, revd on other grounds 65 NY2d 666, supra; People v O’Keefe, 281 App Div 409, 415, affd 306 NY 619; People v Winship, 2 AD2d 952, affd 2 NY2d 944, supra.) This interpretation is consistent with the rule that a challenge for cause is waived when there has been an opportunity to question the juror which was not exercised. (People v Cosmo, 205 NY 91, 101; People v Mack, 35 App Div 114.)
The conduct of Miss Feeley cannot be termed improper on the record herein. She told the court and the attorneys several times during voir dire that she was a volunteer court watcher. Furthermore, she did not wait to be asked but approached the Bench and gave this information before the questioning of jurors began. Miss Feeley did not consider the court watcher’s program to be part of the District Attorney’s office and she believed her volunteer work as a court watcher to be a civic contribution. Miss Feeley did not intentionally withhold information in answer to questions put to her during jury selection and she had no ulterior motive in failing to divulge. The only inquiry calculated to elicit a relationship with law enforcement came in a general question from the court. Miss Feeley did not remember being asked this question, but from her testimony at the hearing it is reasonable to infer that she did not believe her volunteer work had a connection with law enforcement.
The association between the court watcher’s program and *398 the Queens District Attorney is remote since the court watcher’s program is solely a public relations effort. Court watchers are not part of the prosecutorial arm of the District Attorney’s office, there is no pro-prosecution instruction or orientation, and Miss Feeley had no contact with the legal staff. It is also significant that the defendants in this matter were prosecuted by a special State prosecutor for the City of New York who is entirely separate from the District Attorney of Queens County. Thus, there is no evidence that Miss Feeley’s work as a court watcher disposed her toward the prosecution.
The defense attorneys had ample opportunity to ask Miss Feeley under whose auspices the court watcher’s program operated. The defense conducted a private voir dire for each potential juror, and the record of that interrogation shows that Miss Feeley answered all questions put to her about the court watcher’s program fully and forthrightly.
In short there is no indication of impropriety, there is no evidence that information was purposely concealed by a juror, there is no showing that the information Miss Feeley failed to disclose had any effect on her fair and impartial consideration of the evidence at trial and there is no reason to conclude Miss Feeley was biased or prejudiced against defendants.
CPL 330.40 (2) (g) places upon defendants the "burden of proving by a preponderance of the evidence every fact essential to support the motion” (People v Lakomec, 86 AD2d 77, 82). Nonetheless, as noted above, the claim by defendants that they were denied a fair trial is one of constitutional magnitude. The court has weighed the defendants’ claim and finds, beyond a reasonable doubt, that any irregularity caused by Miss Feeley’s failure to disclose her association with the Queens District Attorney was harmless and did not influence the verdict in this case. (Chapman v California, 386 US 18, 24, citing Fahy v Connecticut, 375 US 85; People v Catalanotte, 67 Misc 2d 351.)
Accordingly, the motion for a new trial is denied.

. It is the rule, based on public policy favoring freedom of discussion in the jury room, that the statements of jurors may not be used by a defendant to impeach a verdict against him. (McDonald v Pless, 238 US 264, 267-268; People v De Lucia, 20 NY2d 275, 279; Richardson, Evidence § 407 [10th ed 1973].) The procedure utilized by defendants of sending an investigator to the home of a juror without a good-faith basis for inquiry appears to erode the policy of protecting jurors from harassment. Although the taped interview reflects the investigator’s disavowal of an intent to probe the delibera *394 tive process, his questions were directed at the jury’s deliberations as well as at possible bias.

. Defendants do not specify under which of the three subdivisions of CPL 330.30 their motion is brought. However, subdivision (1) must be based on a ground appearing in the record and subdivision (3) applies to newly discovered evidence. Only subdivision (2) would appear applicable.

. Former Code of Criminal Procedure § 465 replaced in 1971 by CPL 330.30, authorized the court to grant a new trial when the jury was guilty of misconduct by which a defendant’s substantial rights were prejudiced and where such misconduct prevented a fair and due consideration of the case. Since the thrust of the former and present sections is similar, cases decided under the former code are relevant authority. (See, People v Phillips, 87 Misc 2d 613, affd 52 AD2d 758, lv denied 39 NY2d 949.)