People v Neulander (2018 NY Slip Op 04925)





People v Neulander


2018 NY Slip Op 04925


Decided on June 29, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 29, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CARNI, CURRAN, AND WINSLOW, JJ.


1207 KA 16-02210

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
M. ROBERT NEULANDER, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






SHAPIRO ARATO LLP, NEW YORK CITY (ALEXANDRA A.E. SHAPIRO OF COUNSEL), FOR DEFENDANT-APPELLANT. 
WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Onondaga County Court (Thomas J. Miller, J.), rendered July 30, 2015. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and tampering with physical evidence. 
It is hereby ORDERED that the judgment so appealed from is reversed on the law and a new trial is granted.
Memorandum: These consolidated appeals arise from the death of defendant's wife in 2012. In appeal No. 1, defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree (Penal Law § 125.25 [1]) and tampering with physical evidence (§ 215.40 [2]). In appeal No. 2, defendant appeals from an order denying his CPL article 440 motion to vacate the judgment of conviction.
In appeal No. 1, defendant contends that the conviction is not supported by legally sufficient evidence and that the verdict is contrary to the weight of the evidence with respect to both counts. "Inasmuch as defendant made only a general motion for a trial order of dismissal [with respect to the murder count], he failed to preserve for our review his challenge to the legal sufficiency of the evidence" with respect to that count (People v Taylor, 136 AD3d 1331, 1332 [4th Dept 2016], lv denied 27 NY3d 1075 [2016]; see People v Gray, 86 NY2d 10, 19 [1995]). In any event, we conclude that defendant's contention lacks merit with respect to both counts. "It is well settled that, even in circumstantial evidence cases, the standard for appellate review of legal sufficiency issues is whether any valid line of reasoning and permissible inferences could lead a rational person to the conclusion reached by the [jury] on the basis of the evidence at trial, viewed in the light most favorable to the People" (People v Hines, 97 NY2d 56, 62 [2001], rearg denied 97 NY2d 678 [2001] [internal quotation marks omitted]; see People v Reed, 22 NY3d 530, 534 [2014], rearg denied 23 NY3d 1009 [2014]; see generally People v Danielson, 9 NY3d 342, 349 [2007]).
Here, the evidence establishes that the victim died of a complex, comminuted skull fracture. The Medical Examiner testified at trial that he initially determined that the victim's death was the result of a fall in the shower. The Medical Examiner further testified, however, that he changed his opinion after reviewing the evidence and discussing the case with other pathologists and the prosecution, and that he now opined that the victim's death was a homicide. In addition, the prosecution introduced the testimony of several experts who opined that the victim's head injury was caused by multiple blows, and by more force than would be expected if the victim had simply fallen from a standing position in the shower. The prosecution further established that the victim sustained numerous other injuries that could not be explained by a simple fall, including bruises on her nose, fingers and arms and abrasions on both sides of her face. Also, the hallway and bedroom into which defendant admitted that he carried the victim [*2]contained numerous blood spatters on various surfaces and objects, including some spatters on a sloped ceiling over six feet above the ground.
The prosecution's experts opined that the evidence was consistent with the prosecution's theory of the case that defendant intentionally attacked the victim, hit her in the head several times with an unknown object, moved her body to the shower to make it appear that the injuries were caused by an accident that occurred at that location, and then woke his daughter so that she could observe him moving the victim's body back to her bedroom. The prosecution also introduced evidence establishing that defendant disposed of an item of clothing that he was wearing at the time of the incident and several pieces of bedding, which, along with the evidence that defendant moved the victim's body, supported the inference that defendant was acting to conceal evidence of the crime. We conclude that, viewing the evidence in the light most favorable to the People, there is a "valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the [factfinder] on the basis of the evidence at trial" (People v Williams, 84 NY2d 925, 926 [1994]; see Danielson, 9 NY3d at 349), and thus that the evidence is legally sufficient with respect to both counts of the indictment (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Furthermore, viewing the evidence in light of the elements of the crimes as charged to the jury (see Danielson, 9 NY3d at 349), we reject defendant's contention in appeal No. 1 that the verdict is against the weight of the evidence (see generally Bleakley, 69 NY2d at 495). "Even assuming, arguendo, that a different verdict would not have been unreasonable, [we note that] the jury was in the best position to assess the credibility of the witnesses and, on this record, it cannot be said that the jury failed to give the evidence the weight it should be accorded' " (People v Chelley, 121 AD3d 1505, 1506 [4th Dept 2014], lv denied 24 NY3d 1218 [2015], reconsideration denied 25 NY3d 1070 [2015]). Contrary to defendant's contention, the testimony of his experts, who opined that the evidence was consistent with the defense theory that the victim accidentally slipped and fell in the shower, does not require a different result. "The jury was presented with conflicting expert testimony regarding the cause of death, and the record supports its decision to credit the People's expert testimony" (People v Fields, 16 AD3d 142, 142 [1st Dept 2005], lv denied 4 NY3d 886 [2005]; see People v Pratcher, 134 AD3d 1522, 1525 [4th Dept 2015], lv denied 27 NY3d 1154 [2016]; see generally People v Miller, 91 NY2d 372, 380 [1998]).
Defendant further contends in appeal No. 1 that the court abused its discretion in denying his motion to set aside the verdict pursuant to CPL 330.30 (2) based on allegations of juror misconduct. We agree with defendant, and we therefore reverse the judgment in appeal No. 1, grant the motion and grant a new trial.
CPL 330.30 (2) provides that a verdict may be set aside on the ground "[t]hat during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (emphasis added). Upon a hearing pursuant to CPL 330.30, "the defendant has the burden of proving by a preponderance of the evidence every fact essential to support the motion" (CPL 330.40 [2] [g]). When determining a motion to set aside a jury verdict based upon juror misconduct, "the facts must be examined to determine . . . the likelihood that prejudice would be engendered" (People v Brown, 48 NY2d 388, 394 [1979]; see People v Maragh, 94 NY2d 569, 573-574 [2000]). Thus, similar to the statutory language in CPL 210.35 (5) with respect to a motion to dismiss an indictment based upon a defect in the grand jury proceedings (see People v Huston, 88 NY2d 400, 409 [1996]; People v Sayavong, 83 NY2d 702, 709-711 [1994]), the plain language of CPL 330.30 (2) does not require a defendant to establish actual prejudice.
We begin by noting that, at the hearing on the CPL 330.30 motion, defendant established that during the trial juror number 12 engaged in text messaging with third parties about the trial. Indeed, after being selected to serve on the jury, juror number 12 received a text message from her father that stated: "Make sure he's guilty!" During the trial, juror number 12 received a text message from a friend asking if she had seen the "scary person" yet. Juror number 12 responded: "I've seen him since day 1." Juror number 12 admitted at the subsequent hearing into her misconduct that she knew that the moniker "scary person" was a reference to defendant. Another friend sent juror number 12 a text message during the trial that stated: "I'm so anxious to hear [*3]someone testify against Jenna [defendant's daughter]." Juror number 12 responded: "No one will testify against her! The prosecution has already given all of his witnesses, we are on the defense side now! The prosecutor can cross examine her once she is done testifying for the defense." Later that night, the same friend replied via text message: "My mind is blown that the daughter [Jenna] isn't a suspect." Although instructed by the court numerous times to report any such communication to the court, juror number 12 repeatedly failed to do so.
After the verdict, a discharged alternate juror reported to defense counsel that juror number 12 had engaged in prohibited communications during the trial. Defendant moved pursuant to CPL 330.30 (2) to set aside the verdict on the ground of juror misconduct that was not known by defendant prior to the verdict. During the prosecution's preparation of its opposition to the motion, the prosecution met with juror number 12 but she did not disclose any of the above improper communications to the prosecutor, although this clearly was an opportunity to do so. Indeed, juror number 12 specifically provided some innocuous text messages as attachments to her affidavit in opposition to the motion. The improper text messages, however, were not provided to the prosecution or the court and were in fact deleted by juror number 12 some time before she was ordered to turn over her phone for forensic examination. Notably, juror number 12 stated under oath in her affidavit in opposition to defendant's motion that: "At all times throughout the trial and throughout the deliberative process I followed Judge Miller's instructions." This statement was patently untruthful. Moreover, when juror number 12's cell phone was the subject of a judicial subpoena duces tecum, she moved to quash the subpoena.
Forensic examination of her cell phone revealed that juror number 12 had selectively deleted scores of messages or parts thereof and that she had deleted her entire web browsing history. At the hearing, juror number 12 was unable to provide any explanation for why she had done that. Indeed, the trial court found that her selective deletion of certain text messages demonstrated "a consciousness that she had engaged in misconduct, in violation of the Court's admonitions." The trial court further concluded that "[i]t is worthy of note that Juror #12 deleted other messages which demonstrated that she understood the prohibition on speaking about this case with third parties." Nonetheless, the trial court concluded that there was no basis in the record to find a likelihood that juror number 12's "missteps, individually or collectively, created a substantial risk of prejudice to the defendant."
We observe that, had this juror's misconduct been discovered during voir dire or during the trial, rather than after the verdict, the weight of authority under CPL 270.35 would have compelled her discharge on the ground that she was grossly unqualified and/or had engaged in misconduct of a substantial nature (see People v Havner, 19 AD3d 508, 508 [2d Dept 2005], lv denied 5 NY3d 789 [2005] ["the trial court properly discharged a juror pursuant to CPL 270.35 after determining, based on a thorough inquiry, that the juror had disregarded its instructions by discussing the case outside the courtroom and then lied when questioned about the substance of the discussion"]; People v Pineda, 269 AD2d 610, 611 [2d Dept 2000], lv denied 95 NY2d 802 [2000]; People v Robertson, 217 AD2d 989, 990 [4th Dept 1995], lv denied 86 NY2d 846 [1995]; People v Fox, 172 AD2d 218, 219-220 [1st Dept 1991], lv denied 78 NY2d 966 [1991]). Here, due to juror number 12's flagrant failure to follow the court's instructions and her concealment of that substantial misconduct, defendant, through no fault of his own, was denied the opportunity to seek her discharge during trial on the ground that she was grossly unqualified and/or had engaged in substantial misconduct.
We reject our dissenting colleagues' attempt to characterize this as a "speculative discussion of what might have happened if the juror's misconduct had been discovered earlier." Our focus is not on the time of discovery of the misconduct. Instead, our focus is juror number 12's failure to follow the court's instructions, her failure to report her own misconduct and the improper communications that she received from others, and her concealment of that misconduct and the improper communications, evidencing a consciousness that she had engaged in misconduct, which denied defendant the opportunity to pursue a remedy under CPL 270.35. Under the dissent's approach, a juror's flagrant disregard of court rules and admonitions and her active concealment of her own misconduct becomes "speculative" in the context of a CPL 330.30 motion because the juror was successful in deliberately concealing and withholding the misconduct from the court and defendant until after the verdict. We conclude that there is nothing speculative about the denial of defendant's substantial right and concrete opportunity to [*4]pursue a remedy under CPL 270.35 based on the juror misconduct that is patent on this record.
Even assuming, arguendo, that the court was correct in determining that juror number 12's "intentions were pure," we conclude that the juror's intentions are not relevant to the analysis. "[E]ven well-intentioned jury conduct" may create a substantial risk of prejudice to the rights of the defendant (Brown, 48 NY2d at 393). Moreover, it was not necessary for defendant to show that the juror's conduct during the trial influenced the verdict inasmuch as, "[i]f it was likely to do so, it was sufficient to warrant the granting of the motion" (People v Pauley, 281 App Div 223, 226 [4th Dept 1953]).
In summary, the evidence at the hearing established, inter alia, that juror number 12 received a message from her father that arguably implored her to ensure defendant's conviction, repeatedly disregarded the court's instructions, and actively concealed and was untruthful about her numerous violations of the court's instructions. These facts were not controverted at the hearing. We conclude that every defendant has a right to be tried by jurors who follow the court's instructions, do not lie in sworn affidavits about their misconduct during the trial, and do not make substantial efforts to conceal and erase their misconduct when the court conducts an inquiry with respect thereto. These rights are substantial and fundamental to the fair and impartial administration of a criminal trial. Presented with the totality of the circumstances here, we thus conclude that defendant established by a preponderance of the evidence that juror number 12 engaged in substantial misconduct that "created a significant risk that a substantial right of . . . defendant was prejudiced" (People v Giarletta, 72 AD3d 838, 839 [2d Dept 2010], lv denied 15 NY3d 750 [2010]). As a result, the judgment must be reversed and a new trial granted.
Contrary to the dissent's characterization of our holding, we do not fashion a rule that "a conviction must be reversed any time that a juror's family member or friend mentions a trial to that juror." However, we do conclude that, in this case, a new trial is required because juror number 12 received a message during the trial from her father imploring her to "Make sure [defendant's] guilty!," and there were numerous other improper communications between juror number 12 and her friends directly concerning specific issues in the trial, which juror number 12 failed to report and then actively concealed and lied about under oath during the court's inquiry into the misconduct.
In light of our determination, we do not address defendant's remaining contentions in appeal No. 1, and we dismiss as moot defendant's appeal from the order in appeal No. 2 (see People v Dealmeida, 124 AD3d 1405, 1407 [4th Dept 2015]).
All concur except Smith and Winslow, JJ., who dissent and vote to affirm in the following memorandum: We disagree with the majority's conclusion in appeal No. 1 that a new trial is required on the ground that County Court erred in denying defendant's motion to set aside the verdict pursuant to CPL article 330 based on allegations of juror misconduct. Inasmuch as we have considered defendant's remaining contentions in appeal No. 1 and conclude that they do not require reversal or modification of the judgment, we respectfully dissent and vote to affirm in that appeal.
The Criminal Procedure Law provides that a verdict may be set aside or modified on the ground "[t]hat during the trial there occurred, out of the presence of the court, improper conduct by a juror, or improper conduct by another person in relation to a juror, which may have affected a substantial right of the defendant and which was not known to the defendant prior to the rendition of the verdict" (CPL 330.30 [2]). It is well settled, however, that " not every misstep by a juror rises to the inherently prejudicial level at which reversal is required automatically' " (People v Clark, 81 NY2d 913, 914 [1993], quoting People v Brown, 48 NY2d 388, 394 [1979]). Whether reversal is required is a "fact-intensive" issue, and the trial court is "vested with discretion in deciding CPL 330.30 (2) motions" (People v Rodriguez, 100 NY2d 30, 35 [2003]). Finally, and of paramount importance, "[a]bsent a showing of prejudice to a substantial right, . . . proof of juror misconduct does not entitle a defendant to a new trial" (People v Irizarry, 83 NY2d 557, 561 [1994]).
Here, the court conducted a thorough hearing on defendant's motion, and we agree with the majority and defendant that the evidence at the hearing established that juror number 12 [*5]failed to follow the court's instructions concerning communicating with outside parties about the case prior to rendering a verdict by sending and receiving text messages regarding the trial and the events surrounding it, and by misrepresenting her actions when questioned about them. In addition, the evidence at the hearing established that juror number 12 deleted the browser history and some of the text messages on her cell phone, and we agree with the court that she did so in an attempt to cover up those communications. Contrary to defendant's further contention and the majority's conclusion, however, the court did not abuse its discretion in denying the motion to set aside the verdict based on juror number 12's conduct. The People performed a forensic evaluation of the juror's cell phone and were able to retrieve the deleted messages. Those messages, and the undeleted ones that were also introduced in evidence at the hearing, included messages in which juror number 12 told others that she was nervous because the case was so serious, and another in which she said that "in reality someone's life is in our hands! It's our decision to say if he is guilty or not! We could send an innocent man to prison or put a murderer away!" In addition, the juror repeatedly refused to discuss the case in her texts, she indicated that she would not do so until the trial ended, and she expressed her commitment to hearing all the evidence before reaching any conclusion. Furthermore, there is no evidence that the juror was exposed to any evidence that was excluded from the trial.
We agree with the majority that juror number 12 unquestionably attempted to hide these interactions and then testified under oath that she did not violate the court's directives not to discuss the case. Nevertheless, the court concluded that, although the juror engaged in misconduct, the evidence established that she "took her role as a juror seriously," and decided the case "based on the evidence alone." In addition, the evidence at the hearing established that the juror received communications that may be "characterize[d] as inflammatory.' [Juror number 12, h]owever, . . . testified unequivocally that she was not affected by these comments, that she did not discuss the[ facts of the] case with anyone during the trial, and that she had decided the case impartially, based only on the evidence" (People v Wilson, 93 AD3d 483, 485 [1st Dept 2012], lv denied 19 NY3d 978 [2012]). We perceive no reason to disturb the court's credibility determinations, and we agree with its conclusion that reversal is not required here because defendant failed to establish any prejudice, or likelihood of prejudice, from the juror's misconduct (see Rodriguez, 100 NY2d at 36; People v Richardson, 185 AD2d 1001, 1002 [2d Dept 1992], lv denied 80 NY2d 976 [1992]). The misconduct of the juror does not require setting aside or modifying the verdict unless it "may have affected a substantial right of the defendant" (CPL 330.30 [2]). Here, only speculation supports the conclusion that the juror's misconduct had such an impact and, indeed, all of the evidence indicates that juror number 12 decided the case solely on the evidence.
We respectfully reject the majority's speculative discussion of what might have happened if the juror's misconduct had been discovered earlier, and we instead confine our review to the facts in the record. Criminal Procedure Law § 270.35 (1) applies only to conduct occurring "before the rendition of [the] verdict." Consequently, because the active concealment and misrepresentation by juror number 12 upon which the majority relies occurred after the trial, it cannot support the conclusion that defendant was somehow deprived of an opportunity to move to discharge the juror pursuant to that statute. The majority's conclusion that juror number 12 concealed the misconduct of others is not supported by the record. There is no indication of misconduct by anyone else, and none of those who communicated with the juror is alleged to have violated any law or court directive. In addition, we note that the majority's determination creates a rule that a conviction must be reversed any time that a juror's family member or friend mentions a trial to that juror, and will place a duty on every juror to report their family and friends to the court for mentioning the trial to a juror.
Finally, we respectfully reject the majority's reliance upon the premise that there was no need to demonstrate that the juror's misconduct influenced the verdict, and that, " [i]f it was likely to do so, it was sufficient to warrant the granting of the motion' (People v Pauley, 281 App Div 223, 226 [4th Dept 1953])." Here, inasmuch as we conclude that there is simply no evidence that the juror's misconduct caused prejudice or that it "may have affected a substantial right of the defendant" (CPL 330.30 [2] [emphasis added]), we further conclude that "it was [not] likely to do so, [and thus it is in]sufficient to warrant the granting of the motion" (Pauley, 281 App Div at 226).
Inasmuch as we vote to affirm the judgment in appeal No. 1, we have reviewed [*6]defendant's contentions in appeal No. 2 and conclude that they do not warrant reversal or modification of the order in that appeal. Consequently, we would affirm the order in that appeal as well.
Entered: June 29, 2018
Mark W. Bennett
Clerk of the Court